NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FABIAN ROJAS, | : | |
| | : | Civil Action No. 04-3048(SDW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF PASSAIC, ET AL. | : | **OPINION** |
| | : | |
| | : | March 9, 2007 |
| Defendants. | : | |
| | : | |

**WIGENTON,** District Judge.

Before this Court are Defendants' County of Passaic, Passaic County Sheriff Jerry Speziale, Passaic County Sheriff Department, William Cullen, Edward Dombrowski, William Haywood and Charles Myers' Motion For Summary Judgment pursuant to Fed. R. Civ. P. 56. The Court, having considered the parties' submissions and having decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below, denies in part and grants in part Defendants' motion.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the claims present issues of federal law.

I._____PROCEDURAL HISTORY

On June 29, 2004 Plaintiff Fabian Rojas ("Plaintiff")  filed a Complaint against the above captioned Defendants.  Later, on July 27, 2004, Plaintiff filed an Amended Complaint against the same Defendants.  At the time of filing these complaints Plaintiff was *pro* se; however, he is now represented by counsel.

Plaintiff's four count Amended Complaint alleges the following: that he was terminated in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e et seq., due to his national origin; that he was demoted from Sheriff's Investigator to Communications Officer in violation of Title VII due to his national origin; that defendants' conduct constituted a constructive discharge in violation of Title VII; and that Defendants Dombrowski, Cullen, Haywood and Myers aided and abetted Speziale and the Department in their violations of his Title VII rights.

Defendants have filed summary judgment motions jointly.[1]


II.    MATERIAL FACTS

On August 14, 1995, Plaintiff, a male of Colombian descent, was hired by the County of Passaic, Sheriff's Department, as a Communications Officer with the Passaic County Corrections Center (Defendant Myers' 56.1 Statement ¶ ¶ 1-2; Plaintiff's 56.1 Statement ¶ 1-2 ).  Shortly

---

[1]    It appears that on February 10, 2006 and February 28, 2006 Defendants County of Passaic, Passaic County Sheriff Jerry Speziale, Passaic County Sheriff's Department, William Cullen, Edward Dombrowski, William Haywood and Charles Myers' filed Motions for Summary Judgment.  These motions were withdrawn on March 21, 2006 pursuant to an Order entered by the Honorable Patty Shwartz, U.S.M.J.  The motions were later re-filed jointly on April 10, 2006.

thereafter, on October 14, 1995 he was promoted to Sheriff's Investigator, by then Passaic

County Sheriff Edward Engelhardt (Defendant Myers' 56.1 Statement ¶ 5; Plaintiff's 56.1

Statement ¶ 5).  He remained in that position during Sheriff Engelhardt successor's, Acting

Sheriff Ronald Fava, term (Defendant Myers' 56.1 Statement ¶ 8; Plaintiff's 56.1 Statement ¶ 8).

However, in November 2001, Passaic County Sheriff Jerry Speziale was elected and on

December 7, 2001 Plaintiff was terminated from employment as a Sheriff Investigator

(Defendant Myers' 56.1 Statement ¶¶10 & 12; Plaintiff's 56.1 Statement ¶ ¶ 10 & 12).  His

termination occurred during a meeting with Defendants Cullen, Dombrowski and Haywood, all

of whom were Undersheriffs at the time (Defendant Myers' 56.1 Statement ¶ 10; Plaintiff's 56.1

Statement ¶ 10).[2]  Cullen conducted the meeting.  (Defendant Myers' 56.1 Statement ¶ 12;

Plaintiff's 56.1 Statement ¶ 13).  The reasons for his termination are contested.[3]

On January 9, 2002, Plaintiff spoke to Defendant Charles Meyers (Defendant Myers' 56.1

Statement ¶ 16; Plaintiff's 56.1 Statement ¶ 16).[4]  At or around that time, his employment as a

_____

[2]    Plaintiff contends that then Warden Felix Garcia (who also has filed his own Civil
Rights case) was also present at this time and has submitted an unsigned affidavit by Mr. Garcia -
although plaintiff's counsel asserts Mr. Garcia has agreed to the facts therein but could not
logistically arrange his signature.

[3]    Plaintiff claims that upon being terminated, he was advised that he was being
terminated due to budgetary reasons and because Mr. Cullen heard rumors that Rojas had been
arrested and/or convicted of a drug offense.  (Plaintiff's 56.1 Statement ¶ 12; Affidavit of Felix
Garcia).  Defendant's contest this allegation, and state the reason for his discharge was due to
Sheriff Speziale's desire to appoint other Sheriff Investigators.

[4]    Defendant Myers also sent a memorandum to Personnel regarding his conversation
with Plaintiff advising him of his position and its availability.  Plaintiff denies knowledge of any
such memo.  (Defendant Myers' 56.1 Statement ¶ 18 - 19; Plaintiff's 56.1 Statement ¶ 18 - 19).

3

Communications Officer was discussed and he was told he could return to this position.[5]

Plaintiff confirmed his ability to return to the position of Communications Officer with the New Jersey Department of Personnel (Defendant Myers' 56.1 Statement ¶ 21; Plaintiff's 56.1 Statement ¶ 21).

Plaintiff was later placed on the "Rice List", N.J.S.A. 40A:14-180.  The Rice List is a civil service procedure whereby law enforcement officers laid off by a government agency for reasons of economy can be placed on the list and are eligible for appointment as a law enforcement officer within the state with preference on the list.  (Id.; Defendant Myers' 56.1 Statement ¶ ¶ 22 - 23; Plaintiff's 56.1 Statement ¶ ¶ 22 - 23).  To be placed on the list, Plaintiff was required to sign the appropriate request form which had to be countersigned by Sheriff Speziale (Defendant Myers' 56.1 Statement ¶ 24; Plaintiff's 56.1 Statement ¶ 24).

On January 18, 2002, Plaintiff handed in a letter resigning his position as a Communications Officer (Defendant Myers' 56.1 Statement ¶ 27; Plaintiff's 56.1 Statement ¶ 27).  On the same day, Sheriff Speziale signed and approved his request to be placed on the Rice List (Defendant Myers' 56.1 Statement ¶ 28; Plaintiff's 56.1 Statement ¶ 28).[6]  Plaintiff remained

---

[5]    Defendant alleges that at that time, Myers informed Plaintiff he could return to work as a Communications Officer during the midnight shift because he was still within the Civil Service working test period for that position and on an official leave of absence.  Plaintiff denies being told anything about a working test period.  Further, Plaintiff asserts his return as a communications officer would have constituted a salary decrease of approximately $49,000. (Defendant Myers' 56.1 Statement ¶ 18 - 19; Plaintiff's 56.1 Statement ¶ 18 - 19).

[6]    Plaintiff contends that on January 18, 2002 he handed in a resignation letter specifically stating that he was resigning as a Communications Officer in order to be placed on the Rice List.  However, he was informed by Mr. Garcia that Sheriff Speziale would not place him on the Rice List unless he withdrew any mention of the Rice List in the letter.  He then re-drafted his resignation letter reflecting the requested change and Sheriff Speziale then signed it. (Plaintiff's 56.1 Statement ¶ 22).

unemployed for the next 20 months until he was hired as a police officer in the Township of Bloomfield (Defendant Myers' 56.1 Statement ¶ ¶ 29 - 30; Plaintiff's 56.1 Statement ¶ ¶ 29 - 30).

## II.   LEGAL STANDARD

### _____*A.   Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party meets its initial burden, the burden then shifts to the non-movant who "may not rest upon the mere allegations or denials of [its] pleading, but the [non-movant's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "If the [non-movant] does not so respond, summary judgment, if appropriate, shall be entered against the [non-movant]."  Fed. R. Civ. P. 56(e).  The court may not weigh the evidence and determine the truth of the matter. Anderson, 477 U.S. at 249.  All justifiable inferences of the non-moving party are to be drawn in his favor.  Id. at 255 (citation omitted).

# III    DISCUSSION

*A.      Plaintiff is an At-Will Employee Protected by Title VII*

Defendant argues that Plaintiff is an at-will employee, has no contractual right to employment and can be terminated for any reason.  Plaintiff contends he is not an at-will employee and is protected by Title VII, 42 U.S.C. § 2000e et seq.

Immediately prior to his termination, plaintiff was employed as a Sheriff's Investigator. Pursuant to New Jersey statute:

> The sheriff of each county may appoint a number of persons, not to exceed 15% of the total number of sheriff's officers employed by the sheriff . . . to the position of sheriff's investigator.  All sheriff's investigators **shall serve at the pleasure of the sheriff making their appointment** and shall be included in the unclassified service of the civil service.

N.J.S.A. 40A:9-117a (emphasis added).

The statutory language is clear.  The county sheriff appoints the investigators and they serve at his pleasure.  Plaintiff is an at-will employee.  However, defendants can not terminate plaintiff for discriminatory reasons even if he is an at-will employee.

According to the 'employment at will' doctrine, an "employment relationship was terminable at will in the absence of a contract to the contrary.  Consequently, even employees who performed faithful service over a long period of time could be terminated for no reason or insufficient reason."  Bruffett v. Warner Communications, Inc., 692 F.2d 910, 916 (3d Cir. 1982).  Protection is available to at will employees however, "by federal statutes in which Congress has limited employers' rights to discharge at will because of certain overriding national policies.  Predominant among these are provisions of Title VII prohibiting discharge based on

6

race, color, religion, sex, or national origin . . ." Id.  Federal anti-discrimination statutes take

precedence over the at-will discharge principle.  Kachmar v. Sungard Data Systems, Inc., 109

F.3d 173, 181 ( 3d Cir. 1997) (citation omitted).  Therefore, even though Plaintiff was an at-will

employee, he is nevertheless protected by Title VII.

> B.   *PLAINTIFF'S ABILITY TO ESTABLISH HE WAS DISCHARGED BECAUSE OF HIS ETHNICITY*

The federal statute at issue provides:

> It shall be an unlawful employment practice for an employer to fail or
> refuse to hire or to discharge any individual, or otherwise to discriminate
> against any individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's race, color, religion, sex,
> or national origin.

42 U.S.C. ¶ 2000e-2(a)(1).

In a Title VII case, plaintiff bears the burden of proving his case.  He carries the initial

burden under the statute of establishing a prima facie case of racial discrimination.  This may be

done by showing (1) he belongs to a racial minority; (2) that he applied and was qualified for a

job for which the employer was seeking applicants; (3) that, despite his qualifications, he was

rejected; and (4) that after his rejection, the position remained open and the employer continued

to seek applicants from persons of complainant's qualifications.  McDonnell Douglas Corp. V.

Percy Green, 411 U.S. 792, 802 (1973).  The facts will vary in Title VII cases, and the above

stated specifications are not necessarily applicable in every respect to differing factual situations.

Id. at n. 13.

After plaintiff makes his prima facie case, the burden then shifts to the employer to

articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Id. at 802.

Finally, the plaintiff has to be afforded a fair opportunity to show that the employer's stated reason for the complainant's rejection was in fact pre-textual.  Id. at 804.

In Fuentes v. Perskie, the Third Circuit set forth an analysis detailing the manner in which a plaintiff could prevail in a Title VII case. There, the court stated

> when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

32 F.3d 759, 764 (3d Cir. 1994).

It is not required that plaintiff adduce evidence directly contradicting the defendant's proffered legitimate reasons.  Id.   In addition, a factfinder can use evidence revealing inconsistencies in statements or procedures and evidence revealing a hostile atmosphere to find pretext.  Antol v. Perry, 82 F.3d 1291, 1302 (3d. Cir. 1996)

With this test in mind, this Court analyzes Plaintiff's case.  Plaintiff is of Colombian descent and therefore belongs to a racial minority; he served as a Sheriff's Investigator and was later terminated; and other individuals were hired to this position.  As Plaintiff has made his prima facie case, Defendants must provide a legitimate nondiscriminatory reason for firing Plaintiff.  Defendants have done so, since they argue that Plaintiff was terminated due to Speziale's desire to replace some of the officers.  Next, Plaintiff has the burden of showing that this reason was nothing more than a pretext.

In the instant matter, Plaintiff was terminated at the direction of Sheriff Speziale after he

took office.[7]  Plaintiff alleges he did so, through Defendant Cullen, who told him it was due to

budgetary reasons.  While Defendants proffer another reason, in order to substantiate his claims

against Defendants, Plaintiff points to Speziale's alleged prejudice/stereotyping of Mexicans and

Colombians by citing to a book he authored, *Without a Badge*, which at least in part chronicles

his work in undercover operations targeted at South American drug cartels.  (Pl. Opp. Br. at 30).

Speziale argues that his comments about Colombians and Mexicans were in relation to setting up

controlled narcotic deliveries in those countries, and that his experience was that the government

could not be trusted. (Def. Reply Br. at 6).

Plaintiff also cites to newspaper articles referencing complaints with regard to Speziale's

mistreatment of Hispanics in his administration and to the termination of the only other Hispanic

Sheriff's Investigator at the time he was terminated. (Id. at 25 & 28).  Plaintiff has produced

exhibits revealing the number of new hires under the Speziale administration.  These records

appear to indicate that there were nine (9) Hispanics hired by his administration in the first few

months of his taking office.  (Pl.'s Opp. Br., Ex. C.)  Defendant Speziale counters, stating that it

laid off (2) non-Hispanic officers when plaintiff was discharged, and that he has hired numerous

Hispanics to its law enforcement work force during his time as County Sheriff.   Finally, Plaintiff

asserts that another Hispanic individual, Felix Garcia, who has his own civil rights case pending

against the County of Passaic, can corroborate his account of what was told to him at his

termination.

This Court is satisfied that Defendants' version of the reason for Plaintiff's termination is

---

[7]    Plaintiff claims he had a stellar work history and obtained training/certifications and
commendations during his time as a Sheriff Investigator.  (Deposition Transcript of Sheriff
Speziale at 18:17-25 to 20:3 - 17.)

inconsistent.  While Defendant Speziale asserts Plaintiff was not terminated for budgetary

reasons, he was nevertheless placed on the Rice List, which is specifically for individuals who

have been terminated due to reasons of economy.  He also has Mr. Garcia to corroborate his

version and the inconsistency.  The Court is satisfied that this, coupled with Mr. Garcia and

complaints of other Hispanics, suffices to discharge petitioner's burden of proof at this stage

against Defendant Speziale.

     C.    *PROTECTION UNDER THE DOCTRINE OF QUALIFIED IMMUNITY*

     The determination of whether a defendant is entitled to a defense of qualified immunity is

a question of law for the Court to decide.  <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir.

2000).  Qualified immunity is a doctrine that "holds that government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  <u>Doe v. County of Centre</u>, 242 F.3d 437, 453-54 (3d Cir.

2001)(citation omitted).  In determining whether a defendant is immune from suit, the court must

determine (1) whether the plaintiff ha[s] alleged a violation of h[is] statutory or constitutional

rights; (2) whether the rights alleged to have been violated w[ere] clearly established in the

existing law at the time of the violation; and (3) whether a reasonable official should have known

that the alleged action violated the plaintiff's rights."  <u>Id.</u> at 454 (citation omitted).

     Applying this standard in the instant matter,  Mr. Rojas has alleged discharge based on his

status as a Colombian.  His protection from such termination, if true, is well established in Title

VII which was a valid law at the time, as set forth, <u>supra</u>.  Therefore, clear implications of

constitutional violations which were firmly established in existing law at the time of said

violations exist, satisfying the first and second prong of the above analysis.  However, in contemplation of the third prong, this Court must consider whether Defendants' actions were objectionably reasonable.

Defendant would be entitled to qualified immunity if, in light of the circumstances and what was known to the officer at the time of the alleged violation, a reasonable officer could have believed that his conduct was lawful.  Good v. Dauphin Co. Soc. Serv., 891 F.2d 1087, 1092 (3d Cir. 1989).  Therefore, the test for qualified immunity is not whether a reasonable officer could have believed that the conduct in question was unlawful, as this places a heavier burden on the officer than is appropriate, but rather, the officer is entitled to qualified immunity if a reasonable officer could have believed that, under the circumstances at that time, the conduct did not violate plaintiff's clearly established constitutional rights.  In re City of Philadelphia Litigation, 49 F.3d 945, 961 n. 14 (3d. 1994); Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998).  The qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly  incompetent or those who knowingly violate the law'".  Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (citation omitted).

In the instant matter, Plaintiff asserts that Defendants Cullen, Dombrowski and Haywood discharged him in violation of Title VII based on his ethnicity.  While the parties conflict as to the reason for Plaintiff's termination, no reasonable officer would have believed his conduct could be lawful if terminating someone based on his ethnicity.  However, aside from being present when plaintiff was terminated, Plaintiff has set forth no evidence to establish Dombrowski and Haywood had anything to do with the decision to terminate Plaintiff, or even acted in concert with others.  These Defendants would obtain their marching orders from Sheriff

11

Speziale and therefore Plaintiff's termination was at the direction of Sheriff Speziale.  There is simply no evidence they knew or believed of any ethnically motivated reason for the termination. Therefore, although Defendants are not entitled to qualified immunity, this Court dismisses the claims as to Defendants Dombrowski and Haywood as Plaintiff has set forth no proof as to his allegations against them.  As to Defendant Cullen, while it is alleged he conducted the meeting when plaintiff was terminated, again there is no evidence that he took part in the decision making process or was aware of any discriminatory motivation.  Therefore, he too is dismissed.  As to Defendant Myers, he was not present when Plaintiff was terminated and there is simply no evidence to sustain any cause of action against him as well.  He simply advised Plaintiff he could return to work as a Communications Officer.  However, as to Defendant Speziale, it was his determination to hire or fire Sheriff's Investigators pursuant to statute.  Assuming Plaintiff's allegations of discrimination are true, Speziale would not be entitled to qualified immunity.[8]

> D.    *PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM*

In his Summary Judgment Opposition Brief, Plaintiff concedes that his tortious interference claim is not an articulable claim.  (Pl. Br. at 31).   He is not pursuing this claim. Therefore, Defendant's argument to dismiss this claim is moot.

---

[8]    This Court finds Defendants' argument that Speziale would be entitled to legislative immunity unpersuasive in this context.

E.     *ALLEGED HEARSAY EVIDENCE*

This Court finds that Defendant's hearsay objections are premature at this time.  These arguments may be renewed, *in limine*, prior to trial.


**III.    CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment as to Defendants Cullen, Dombrowski, Haywood and Myers is **GRANTED** and these Defendants are dismissed. Count IV (Aiding and Abetting) is also **DISMISSED**.  Defendants' Motion for Summary Judgment as to Defendants County of Passaic, Passaic County Sheriff Jerry Speziale and Passaic County Sheriff's Department are **DENIED**.


**SO ORDERED**


s/Susan D. Wigenton, U.S.D.J.