# SUSSMAN & LeBOEUF, LLC

ATTORNEYS AT LAW
55 WASHINGTON STREET, SUITE 209
EAST ORANGE, NEW JERSEY 07017
TELEPHONE: (973) 675-4242
FAX: (973) 675-2204

September 21, 2007

**Via E-Filing**
The Honorable Susan D. Wigenton, U.S.D.J.
United States District Court of New Jersey
M.L. King Jr., Federal Building
Newark, New Jersey 07102

Re:  **Rojas v. County of Passaic, et. al.**
     **CV-04-3048 (SDW)**

Dear Judge Wigenton:

Pursuant to the order of U.S. Magistrate Madeline Cox Arleo, U.S.M.J., allowing for a letter brief in lieu of a more formal memorandum of law, please accept this letter as Plaintiff's Trial Brief.

The following represents Plaintiff's position with regard to the contested questions of law as well as anticipated evidentiary issues.

## I.  PLAINTIFF HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In the Final Pretrial Order, Defendants suggest that Mr. Rojas has failed to state a claim upon which relief can be granted, presumably pursuant to F.R.C.P. 12(b)(6). However, it

should be noted that when extraneous evidence is considered by the court in reviewing such a motion, the motion should then be treated as one for summary judgment in accordance with F.R.C.P. 56. See F.R.C.P. 12(b); see also Boro Hall Corp. v. General Motors Corp., 124 F.2d 822 (2d Cir. 1942).

As the Defendant's motion for summary judgment was already heard by and decided upon by this Court, Plaintiff contends that a motion to dismiss for failure to state a claim upon which relief can be granted is now moot.   In any event, Plaintiff relies upon the relevant case law, facts and supporting exhibits previously submitted by way of his brief in opposition to summary judgment to support his contention that such a motion should be denied.

## II.  PLAINTIFF WILL PROVE ALL ELEMENTS OF A TITLE VII CLAIM.

Title VII of the Civil Rights Act of 1964 (an act of the United States Congress) states in pertinent part:

> It shall be an unlawful employment practice for an employer
>
> (1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or,

> (2)     to limit, segregate, or to classify his
> employees or applicants for employment in any
> way which would deprive or tend to deprive
> any individual of employment opportunities or
> otherwise adversely affect his status as an
> employee, because of such individual's race,
> color, religion, sex or national origin.

42 U.S.C. §2000e-2(a)(emphasis added).

In the present case, it is Plaintiff's intention to prove before the jury that he, an employee of the Passaic County Sheriff's Office, was terminated by his employer, the County of Passaic, the Passaic County Sheriff's Department and Sheriff Jerry Speziale, on account of his Hispanic origin, namely Colombian.

That Sheriff Speziale and the County of Passaic were Mr. Rojas' employers is evident.  Title VII defines an employer as "any person or agent engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding year."  42 U.S.C. §2000(e)(b).  Clearly, the County of Passaic qualifies under such definition.

Additionally, there was compensation for Mr. Rojas' services, another precondition of the necessary employment relationship.  See Walters v. Metro. Educational Enterprises, Inc., 519 U.S. 202, 206 (1997); Haavistola v. Community Fire Co., 6 F.3d 211, 221 (4th Cir. 1993).

3

Furthermore, the evidence will clearly demonstrate that Mr. Rojas was discharged from his employment with the Passaic County Sheriff's Department (either actually or constructively), and the reason was discriminatory on behalf of the relevant decision maker and based on Mr. Rojas' national origin.[1]

Ultimately, a Title VII plaintiff sustains a claim based on the legal analysis outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 <u>U.S.</u> 792 (1973) and its progeny. As demonstrated in Plaintiff's previous submission in opposition to summary judgment, Plaintiff can demonstrate both a *prima facie* case of discrimination as well as prove by a preponderance of the evidence that the defendant's proffered reason for Mr. Rojas termination was merely a pretext to disguise the Defendant's true discriminatory intent. Plaintiff relies on the relevant case law, facts and exhibits in support of his opposition to the motion for summary judgment in support of this point.

### III. PLAINTIFF'S EXISITING PROPERTY RIGHT IN HIS EMPLOYMENT (DESPITE HIS ARGUABLE STATUS AS AN AT-WILL EMPLOYEE) IS AN UNNECESSARY ELEMENT OF A TITLE VII CLAIM.

In the matter before the Court, the Defendants insist on arguing once again that because the Plaintiff was an at-will employee (a contention that the Plaintiff still contests) he has no property right in his employment and thus no sustainable

---

[1] An individual's national origin is defined as "where a person was born or where his ancestors came from." <u>Espinoza v. Farah Mfg. Co.</u>, 414 <u>U.S.</u> 86 (1973).

claim under Title VII. This is a complete misstatement of the law and once again should be summarily dismissed by this Court.

Essentially, the Defendants are just re-hashing an argument already dismissed by Your Honor in Your Honor's Opinion denying summary judgment in part. Once again, Plaintiff relies on his arguments sustained by Your Honor when denying summary judgment that Plaintiff's status as an at-will employee is irrelevant for purposes of a Title VII claim. The Defendant can not now simply state the same argument in a different way in an attempt to circumvent the Civil Rights Act. The purpose of Title VII would be completely lost if the Court offered Defendants' original or reworked argument any merit.

As Your Honor has already ruled, Plaintiff's status as an at-will employee is irrelevant to a Title VII claim. (Opinion of Susan D. Wigenton, U.S.D.J., dated March 9, 2007, p. 6-7.) In said opinion Your Honor quoted, Bruffet v. Warner Communications, Inc., 692 F.2d 910, 916 (3d Cir. 1982), for the proposition that "protection is still available to at-will employees by federal statutes in which Congress has limited employers rights to discharge at-will because of certain overriding natural policies. Predominant among these are provisions of Title VII prohibiting discharge because of national origin."

The Second Circuit addressed this issue where an at-will "provisional" employee sought relief under the Americans with Disabilities Act. Brennan v. Board of Education, 260 F.3d 123 (2d Cir. 2001). There the Court held that the plaintiff's property right in his employment may affect his right to procedural due process (as in a claim under §1983), but an adverse employment action based on ethnicity (among other factors such as gender or race, etc.) is clearly illegal. Id., at 131.[2] Thus, even assuming *arguendo* that Plaintiff had no property right in his employment, (which he vehemently contests,) the question remains whether Plaintiff was discharged for a discriminatory reason. A lack of a property right in employment is not fatal to an employees Title VII claim.

Thus, in the present case, the Defendant owed Plaintiff a duty not to discriminate against him on account of his national origin regardless of his at-will status, pursuant to Title VII of the Civil Rights Act. The record will reflect that the Defendants clearly breach that duty.

In any event, Plaintiff did possess a property right in his employment. In two cases decided together, Board of Regents v. Roth, 408 U.S. 564 (1972) and Perry v. Sinderman, 408 U.S. 593 (1972), the United States Supreme Court, determined that

---

[2] It should be noted that the framework analysis for a Title VII claim is equivalent to that under the ADA. Warmsley v. New York City Transit Auth., 308 F. Supp. 2d 114 (E.D.N.Y. 2004).

property interest can be created or implied even in the absence of an explicit possession of an interest.  In Roth, the Supreme Court determined that property interests can be created and their dimensions defined by "existing rules or understandings that stem from an independent source, such as state law rules, or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Roth, supra at 575. Furthermore, the Court held, "a property interest can be created by a state statute, a formal contract, or an implied contract from the circumstances."  Perry, supra at 593.  The Court outlined what it termed a "de facto tenure system" when there exist "mutually explicit understandings that include a promise of continued employment" that will ultimately amount to a protected property interest.  Id.

In the present case, such a property interest is clearly evident.

Firstly,  Plaintiff  maintains  his  position  espoused previously in his Brief in Opposition to Summary Judgment that a reading of the relevant statue under which Plaintiff was hired, N.J.S.A. 40A:9-117a creates a tenured relationship.  This is especially evident when analyzing the statute in relation to the adjoining statute and the explicit language difference between the two.  Again, Plaintiff relies on the arguments previously

7

espoused in his Brief in Opposition to Summary Judgment for this contention.

Furthermore, a protected property right can be implied from other circumstances of Mr. Rojas's relationship with Passaic County. For example, Mr. Rojas remained in his position following the resignation of the Sheriff making his appointment (Sheriff Englehardt) and through the tenure of the Sheriff who succeeded him (Sheriff Fava). This could create an implication that Plaintiff had a property interest in his position. Additionally, other factors exist that lend credence to a mutually explicit understanding of de facto tenured employment, such as the fact that Mr. Rojas paid dues to the Sheriff's Department labor union and his position was covered in the relevant Collective Bargaining Agreement.

In sum, despite the lack of necessity for the presence of a protected property interest in order to sustain a Title VII claim, Mr. Rojas can clearly demonstrate one. His position was not terminable by the succeeding sheriff. He served under two different sheriffs. He paid union dues and was part of the collective bargaining agreement. Thus, Mr. Rojas had a property interest in his employment. But, once again, such interest remains completely unnecessary in order for him to sustain his burden for the claim under Title VII.

## IV.  PLAINTIFF IS ENTITLED TO DAMAGES.

Should Mr. Rojas sustain his burden to demonstrate that he was terminated on account of his national origin, he is clearly entitled to damages.  These damages come in the form of back pay, front pay, compensatory damages, punitive damages and attorney's fees.

### A.  *BACK PAY*

Title VII awards back pay as the most fundamental remedy to which an aggrieved employee may be entitled.  42 U.S.C. 2000e-5(g).  In Gurmarkin v. Costanzo, 626 F.2d 1115 (3d Cir. 1980), the Court held:

> The Title VII precedent instructs us that the normative principle of relief in a discrimination situation is the award of back pay . . . And where a legal injury is of an economic character, the general rule is that when a wrong is done, and the law gives a remedy that compensation should equal the injury.

Id., at 1120-1121; citing Albermarle Paper Co. v. Moody, 422 U.S. 405, 418-419 (1975).

Back pay should be granted except when special circumstances are present.  Bunch v. Bullard, 795 F.2d 384, 390 (5th Cir. 1986).  This includes more than just lost wages, but also includes vacation time, sick time, insurance coverage and retirement benefits.  Pettaway v. American Cast Iron Pipe Co., 494 F.2d 211, 263 (5th Cir. 1974).

9

### B.  FRONT PAY

Where reinstatement is unfeasible (as in the present case),
front pay may be awarded.  Maxfield v. Sinclair Int'l., 766 F.2d
788, 796 (3d Cir. 1985), cert. denied 474 U.S. 1057 (1986).
Although an equitable question, in the Third Circuit the amount
of front pay damages is left for the jury.  See id.
Furthermore, front pay is a supplement to back pay, and not a
substitute for it.  Estate of Pitre v. Western Electric Co., 975
F.2d 700, 703 (10th Cir. 1992), cert. denied 510 U.S. 972
(1993).

Front pay is defined as an "award for a reasonable period
in the future to help reestablish victims rightful place in the
job market."  Feldman v. Philadelphia Housing Auth., 43 F.3d
823, 832 (3d Cir. 1994).  Front pay has been deemed equitable
and necessary to execute Title VII's "central statutory purpose
of eradicating discrimination throughout the economy and making
persons whole for injuries suffered through past
discrimination."  King v. Staley, 849 F.2d 1143, 1144-45 (8th
Cir. 1988); quoting Albermarle v. Moody, 422 U.S. at 421.

Front pay is calculated by limiting the amount "required to
compensate a victim for the continuing future effects of
discrimination until the victim can be made whole," and should
consider any amount plaintiff could earn using reasonable

10

efforts.   Suggs v. Service Master Education Food Mgt., 72 F.3d
1226, 1235 (6th Cir. 1996).

### C.   *PUNITIVE DAMAGES*

Under Title VII, punitive damages may be awarded under
certain circumstances.   See Kolstad v. American Dental Assoc.,
527 U.S. 526 (1999).   Per Title VII, a plaintiff may collect
punitive damages if the defendant acted with malice or reckless
indifference to federally protected rights of an aggrieved
individual.   42 U.S.C. §1981a.   The employer must at least
discriminate in the face of a perceived risk that its actions
will violate federal law to be liable in punitive damages.   Id.
However, a plaintiff is not required to demonstrate "egregious
or outrageous discrimination" in order to collect punitive
damages.   Kolstad, supra at 534.

### D.   *COMPENSATORY DAMAGES*

Under 42 U.S.C. §1981, *et. seq.*, a plaintiff is entitled to
compensatory damages to cover nonpecuniary losses, such as
mental anguish and loss of enjoyment of life.   Id.   This
includes pain and suffering, inconvenience and future pecuniary
losses.   Id.   There is a cap on compensatory damages based on
the size of the employer at $300,000.00, however, the jury is
not informed of this cap.   Id.

### *E.    ATTORNEY'S FEES*

Under the portion of the Civil Rights Act amended in 1976, a plaintiff is entitled to attorney's fees for actions under Title VII.  Id.  Granted, this is contrary to the American rule regarding attorney's fees, however this contradiction was consciously created and with good cause.  The Supreme Court construed the attorney's fees provisions of Title VII as intended to encourage private enforcement of civil rights thereby helping to eradicate discriminatory practices.  See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400 (1968). In Newman, the Supreme Court held, "When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and the Nation would have to rely in part of private litigation as a means of securing broad compliance with the law."  Id., at 401-402.  Thus, the Court there awarded attorney's fees where an injunction under Title II was successful.  Id.  The Court later extended this holding to cases where plaintiffs recovered damages as well under Title VII.  See Albermarle v. Moody, supra at 415.

Attorney's fees are normally calculated from "the most useful starting point" of the amount of reasonable hours times a reasonable fee, which will provide "an objective basis from which to make an additional estimate of the value of the lawyer's services."  Hensley v. Eckerhart, 461 U.S. 424, 433

(1983). However, the results obtained may also play a part in the granting of attorney's fees. Id. Fees may be enhanced based on the level of the claimant's success. Id. In fact, the Third Circuit recently upheld a grant of attorney's fees that included a challenged billing rate, questioned hours accrued and the award of a 35% contingency enhancement. Failla v. City of Passaic, 146 F.3d 149 (3d Cir. 1998).

### F. MITIGATION OF DAMAGES

Plaintiff's mitigation of damages may play a part in the award of damages. However, plaintiff's mitigation of damages will affect only front and back pay damages. See Excel Corp. v Bosley, 165 F.3d 635, 639 (8th Cir. 1999).

It should be noted that the burden is on the employer to show that the employee failed to make reasonable efforts to mitigate damages. Id. Furthermore, unemployment compensation is not deductible in the Third Circuit. Craig v. Y&Y Snacks, Inc., 721 F.2d 77, 82 (3d Cir. 1983).

### G. PLAINTIFF'S DAMAGES

In the present case, Mr. Rojas will be seeking from the jury all damages listed herein. This will be based in part on expert economic testimony as well as other evidence presented at trial. It is Plaintiff's position that he has suffered injuries as a result of Defendants' conduct and if the jury finds Defendants liable for those injuries, then he is lawfully

entitled to have the jury reward front pay, back pay, compensatory damages and punitive damages of their choosing. Furthermore, Plaintiff asserts that all reasonable efforts were made to mitigate those damages. Additionally, in the event that Plaintiff establishes Defendants' liability, the Court should award attorney's fees as well.

**V. PLAINTIFF IS ENTITLED TO PRESENT THE JURY WITH ANECDOTAL EVIDENCE DEMONSTRATING AN ATMOSPHERE OF DISCRIMINATION WITHIN THE PASSAIC COUNTY SHERIFF'S DEPARTMENT INCLUDING, BUT NOT LIMITED TO DEFENDANT JERRY SPEZIALE'S NON-FICTION BOOK, ENTITLED WITHOUT A BADGE.**

Defendants have asserted that evidence relating to comments made by Jerry Speziale should be deemed inadmissible. There has been no formal motion *in limine* as of yet on this point. Nevertheless, plaintiff raises the anticipated evidentiary issue in compliance with the Final Pretrial Order, so as not to be barred from arguing for admission of such evidence at the time of trial. However, it should be noted that the Plaintiff has not been informed of the reason for the Defendant's anticipated objection of the evidence in question, and thus, Plaintiff is forced to speculate as to the grounds under which the Defendant may object to this evidence. As such, the Plaintiff respectfully requests the right to supplement this brief with regard to evidentiary objections the Defendants may raise in

their pretrial brief that have not been addressed by Plaintiff's arguments herein.

### A.   *RELEVANCE*

It is anticipated that Defendants will object to the admissibility of any anecdotal evidence, most glaringly Defendant Jerry Speziale's book, as irrelevant. Such an argument would be wholly without merit.

Relevance is defined by the <u>Federal Rules of Evidence</u> as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." <u>F.R.E.</u> 401. <u>Federal Rule of Evidence</u> 402 deems any relevant admissible and conversely, any irrelevant evidence inadmissible.

In this case, the Plaintiff seeks to introduce both a direct quote from the key defendant in the case, in which he mentions members of Plaintiff's ancestry disparagingly and other evidence of a seemingly disparate treatment of other Hispanics within the PCSD. The Plaintiff argues that such evidence is so completely relevant that it hardly warrants discussion. The Defendant would be hard-pressed to persuade this Court that the key decision maker's disparaging remark about other Colombians and the existence of uneven treatment of different ethnicities within the PCSD possesses no tendency to make the fact that Mr.

Rojas was the victim of national origin discrimination more probable than it would be without this evidence.

In Hurley v. Atlantic City Police Dept., 174 F.3d 95 (3d Cir. 1999), the Court found that evidence that women (other than plaintiff) were subjected to a hostile work environment clearly meets F.R.E. 401 requirements. The Court held that such evidence was probative of "whether one of the principal nondiscriminatory reasons asserted by the [employer] for its action was a pretext for . . . discrimination." Hurley, at 110, citing Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988)(held that circumstantial proof of discrimination including evidence of past harassment and evidence of discrimination against others in the protected class, is admissible.)

Granted, stray remarks, when standing alone, may be excluded. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, "when other indicia of discrimination are properly presented the remarks can no longer be deemed stray and the jury has the right to conclude that they bear a more ominous significance." Danzer v. Norden Systems, 151 F.3d 50, 55-56 (2d Cir. 1998). Furthermore, "the jury could believe that the speaker's derogatory remarks reflected company policy, even though . . . comments were made more than one year before termination." Id.; see also Carey v. Mount Desert Island

16

Hospital, 156 F.3d 31, 37 (1st Cir. 1998)(Court held that seemingly stray remarks by members of management group may show corporate state of mind despite not correlating precisely with the "particular actors or timeframe involved in the specific events that generated the claim.")

In this case, the documented quote of Defendant wherein he rejects the trustworthiness of Mexicans and Colombians does not stand alone. It is accompanied by Plaintiff and the only other Hispanic Sheriff's Office Investigator being terminated, as well as an atmosphere of uneven discipline exacted between different ethnicities. Most importantly, it is also coupled with the Defendants' shifting reason for Plaintiff's termination. As such, it should not be considered a stray remark and should be deemed admissible as relevant.

Similarly the evidence of disparate treatment of other Hispanics within the PCSD is equally probative, and in accordance with the above-cited case law should also be deemed admissible.

### B. PROBATIVE VALUE VERSUS PREJUDICE

The Defendant may also claim that the evidence sought to be introduced by the Plaintiff is more prejudicial than probative, pursuant to F.R.E. 403. The Court should reject this argument as well.

When considering whether evidence should be excluded because its probative value is outweighed by undue prejudice, a court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. Mendelsohn v. Sprint/United Management Co., 466 F.3d 1223 (10th Cir. 2006). Furthermore, because granting an objection under this rule involves the ultimate exclusion of possibly relevant evidence, it should be used sparingly. United States v. Morris, 79 F.3d 409 (5th Cir. 1996); Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492 (11th Cir. 1985); United States v. Cole, 755 F.2d 748 (11th Cir. 1985).

This reasoning most likely dictated admission of evidence purporting to show that employees of the defendant circulated a satirical document containing racial stereotypes of African-Americans as more probative than prejudicial. Robinson v. Runyan, 149 F.3d 507 (6th Cir. 1998). Also, evidence of racial epithets by members of a fire department who ultimately rejected a black applicant was similarly deemed to be more probative than prejudicial. Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130 (4th Cir. 1988).

Unfortunately, as in most employment discrimination cases, there exists no "smoking gun". However, that does not preclude Plaintiff from introducing evidence from which the jury may infer that the proffered reason offered by the Defendants is

18

merely a pretext for actual and intentional discrimination.   In
fact, in discrimination cases, the probative value of such
disparate treatment of other individuals as well as the remarks
of the individual who actually terminated the Plaintiff is
greater than in most cases.   As the Seventh Circuit reasoned,
"Different kinds and combinations of evidence can create a
triable issue of intentional discrimination ("disparate
treatment," in the jargon of discrimination law) . . . [o]ne
kind is evidence that can be interpreted as an acknowledgment of
discriminatory intent by the defendant or its agents."   Troupe
v. May Department Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).
Furthermore, "since intent to discriminate is a mental state and
mind reading not an acceptable tool of judicial inquiry, it may
be the only truly direct evidence of intent that will ever be
available."   Id. Thus, the Court should find that the probative
value of the proffered evidence is greater than the potential
prejudice.

        Again, any other objections to the admission of evidence
made by the Defendants are hereby challenged by the Plaintiff,
although not listed herein.

## CONCLUSION

For the aforementioned reasons all requests made by Plaintiff, Fabian Rojas, in anticipation of trial should be granted by the Court.

Respectfully submitted,
Sussman & LeBoeuf, LLC


_____
Jason J. LeBoeuf, Esq.
Counsel for Plaintiff
Fabian Rojas


cc:  Neil Chessin, Esq.
(via e-filing and regular mail)