## 5.0 Title VII Introductory Instruction

### Model

In this case the Plaintiff makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Fabian Rojas claims that he was terminated by the defendant because of Fabian Rojas' national origin.

The County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale deny that Fabian Rojas was discriminated against in any way. I will now instruct you more fully on the issues you must address in this case.

### Comment

Referring to the parties by their names, rather than solely as "Plaintiff" and "Defendant," can improve jurors' comprehension. In these instructions, bracketed references to "Fabian Rojas" or "the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale" indicate places where the name of the party should be inserted.

### Note on the Relationship Between Title VII Actions and Actions Brought Under the Equal Pay Act

A claim for sex-based wage discrimination can potentially be brought under either the Equal Pay Act, or Title VII, or both. There are some similarities, and some important differences, between a claim under the Equal Pay Act and a Title VII action for sex-based wage discrimination.

The most important similarity between the two actions is that the affirmative defenses set forth in the Equal Pay Act — (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; and (iv) a differential based on any other factor other than sex — are applicable to Title VII actions for sex-based wage discrimination. This was made clear by the Bennett Amendment to Title VII. See the discussion in County of Washington v. Gunther, 452 U.S. 161 (1981).

The most important differences between the two actions are:

1. The Equal Pay Act does not require proof of intent to discriminate. The plaintiff recovers under the Equal Pay Act by proving that she received lower pay for substantially equal work. In contrast, Title VII claims for disparate treatment require proof of an intent to discriminate. See Lewis and Norman, Employment Discrimination Law and Practice § 7.15 (2d ed. 2001). But Title VII does not require the plaintiff to prove the EPA statutory requirements of "equal work" and "similar working conditions".

In Gunther, supra, the Supreme Court explained the importance of retaining Title VII recovery as an alternative to recovery under the Equal Pay Act:

Under petitioners' reading of the Bennett Amendment, only those sex-based wage discrimination claims that satisfy the "equal work" standard of the Equal Pay Act could be brought under Title VII. In practical terms, this means that a woman who is discriminatorily underpaid could obtain no relief — no matter how egregious the discrimination might be — unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioners' interpretation. Similarly, if an employer used a transparently sex-biased system for wage determination, women holding jobs not equal to those held by men would be denied the right to prove that the system is a pretext for discrimination.

Moreover, to cite an example arising from a recent case, *Los Angeles Dept. of Water & Power* v. *Manhart*, 435 U.S. 702 (1978), if the employer required its female workers to pay more into its pension program than male workers were required to pay, the only women who could bring a Title VII action under petitioners' interpretation would be those who could establish that a man performed equal work: a female auditor thus might have a cause of action while a female secretary might not. Congress surely did not intend the Bennett Amendment to insulate such blatantly discriminatory practices from judicial redress under Title VII.

452 U.S. at 178–179.

 2. Title VII's burden-shifting scheme (see Instructions 5.1.1, 5.1.2) differs from the burdens of proof applicable to an action under the Equal Pay Act. The difference was explained by the Third Circuit in Stanziale v. Jargowsky, 200 F.3d 101, 107–108 (3d Cir. 2000), a case in which the plaintiff brought claims under Title VII, the ADEA, and the Equal Pay Act:

Unlike the ADEA and Title VII claims, claims based upon the Equal Pay Act, 29 U.S.C. § 206 et seq., do not follow the three-step burden-shifting framework of *McDonnell Douglas*; rather, they follow a two-step burden-shifting paradigm. The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" — work of substantially equal skill, effort and responsibility, under similar working conditions. *E.E.O.C. v. Delaware Dept. of Health and Social Services,* 865 F.2d 1408, 1413–14 (3rd Cir. 1989). The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act. Thus, the employer's burden in an Equal Pay Act claim — being one of ultimate persuasion — differs significantly from its burden in an ADEA [or Title VII] claim. Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense "so clearly that no rational jury could find to the contrary." *Delaware Dept. of Health*, 865 F.2d at 1414.

The employer's burden is significantly different in defending an Equal Pay Act claim for an additional reason. The Equal Pay Act prohibits differential pay for men and women when performing equal work "*except where such payment is made pursuant to*" one of the four affirmative defenses. 29 U.S.C. § 206(d)(1) (emphasis added). We read the highlighted language of the statute as requiring that the employer submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity. See also *Delaware Dept. of Health*, 865 F.2d at 1415 (stating that "the correct inquiry was ... whether, viewing the evidence most favorably to the Fabian Rojas, a jury could *only* conclude that the pay discrepancy resulted from" one of the affirmative defenses (emphasis added)). Thus, unlike an ADEA or Title VII claim, where an employer need not prove that the proffered legitimate nondiscriminatory reasons actually motivated the salary decision, in an Equal Pay Act claim, an employer must submit evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the wage disparity.

 3. The Equal Pay Act exempts certain specific industries from its coverage, including certain fishing and agricultural businesses. *See* 29 U.S.C. § 213. These industries are not, however, exempt from Title VII.

 4. In contrast to Title VII, the Equal Pay Act has no coverage threshold defined in terms of the employer's number of employees.

5. The statute of limitations for backpay relief is longer under the EPA. As stated in Lewis and Norman, *Employment Discrimination Law and Practice* § 7.20 (2d ed. 2001):

An EPA action is governed by the FLSA [Fair Labor Standards Act] statute of limitations. The FLSA provides a two year statute of limitations for filing, three years in the case of a "willful" violation. These statutes of limitation compare favorably from the plaintiff's perspective with the 180-day or 300-day administrative filing deadlines of Title VII.

6. "The Equal Pay Act, unlike Title VII, has no requirement or filing administrative complaints and awaiting administrative conciliation efforts." County of Washington v. Gunther, 452 U.S. 161, 175, n.14 (1981).

Where the plaintiff claims that wage discrimination is a violation of both Title VII and the Equal Pay Act, it will be necessary to give two sets of instructions, with the exception that the affirmative defenses provided by the Equal Pay Act (see Instructions 11.2.1– 11.2.4) will be applicable to both claims. If a claim for sex-based wage discrimination is brought under Title VII only, then these Title VII instructions should be used, with the proviso that where sufficient evidence is presented, the defendant is entitled to an instruction on the affirmative defenses set forth in the Equal Pay Act. See Instructions 11.2.1– 11.2.4 for instructions on those affirmative defenses.

### The "Ministerial" Exception to Title VII

Title VII allows religious organizations to hire and employ employees on the basis of their religious beliefs. 42 U.S.C. § 2000e1(a). By its terms, Title VII does not confer upon religious organizations the right to discriminate against employees on the basis of race, sex, and national origin. But with respect to hiring decisions involving clergy, the Third Circuit has followed other circuits in establishing a "ministerial exception" to Title VII. Petruska v. Gannon University, 462 F.3d 294 (3d Cir. 2006). The *Petruska* Court explained the ministerial exception as follows:

Every one of our sister circuits to consider the issue has concluded that application of Title VII to a minister-church relationship would violate — or would risk violating — the First Amendment and, accordingly, has recognized some form of the ministerial exception. To the extent that a claim involves the church's selection of clergy — in other words, its choice as to who will perform particular spiritual functions — most of these circuits have held that the exception bars any inquiry into a religious organization's underlying motive for the contested employment decision …. Because we conclude that a federal court's resolution of a minister's Title VII discrimination or retaliation claim would infringe upon First Amendment protections, we now join these courts in adopting the exception ….

The ministerial exception, as we conceive it, operates to bar any claim, the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions.

462 F.3d at 303–307 (footnotes omitted). As applied to the facts of *Petruska*, the court held that the ministerial exception barred sexual harassment and retaliation claims based on a religious school's decisions to restructure its ministry — decisions which resulted in the plaintiff being effectively demoted. These were decisions "about who would perform spiritual functions and about how those functions would be divided." 462 F.3d at 307–8.

### 5.1.1 Elements of a Title VII Claim — Disparate Treatment — Mixed–Motive

**Model**

In this case Fabian Rojas is alleging that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale terminated Fabian Rojas. In order for Fabian Rojas to recover on this discrimination claim against the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale, Fabian Rojas must prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally discriminated against Fabian Rojas. This means that Fabian Rojas must prove that his national origin was a motivating factor in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision to terminate Fabian Rojas.

To prevail on this claim, Fabian Rojas must prove both of the following by a preponderance of the evidence:

First: the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale terminated or constructively discharged Fabian Rojas; and

Second: Fabian Rojas' national origin was a motivating factor in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision.

Although Fabian Rojas must prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale acted with the intent to discriminate, Fabian Rojas is not required to prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale acted with the particular intent to violate Fabian Rojas' federal civil rights.

In showing that Fabian Rojas' national origin was a motivating factor for the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's action, Fabian Rojas is not required to prove that [his/her] [protected status] was the sole motivation or even the primary motivation for the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision. Fabian Rojas need only prove that [plaintiff's protected class] played a motivating part in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision even though other factors may also have motivated the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale.

As used in this instruction, Fabian Rojas' national origin was a "motivating factor" if his national origin played a part [or played a role] in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision to terminate Fabian Rojas.

**[For use where defendant sets forth a "same decision" affirmative defense:**

If you find that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's treatment of Fabian Rojas was motivated by both discriminatory and lawful reasons, you must decide whether Fabian Rojas is entitled to damages. Fabian Rojas is not entitled to damages if the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale proves by a preponderance of the evidence that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale would have treated Fabian Rojas the same even if Fabian Rojas' [protected class] had played no role in the employment decision.]

**Comment**

The Supreme Court has ruled that direct evidence is not required for a plaintiff to prove that discrimination was a motivating factor in a "mixed-motive" case, i.e., a case in which an employer had both legitimate and illegitimate reasons for making a job

decision. Desert Palace Inc. v. Costa, 539 U.S. 90 (2003). The mixed-motive instruction above tracks the instruction approved in *Desert Palace.*

The distinction between "mixed-motive" cases and "pretext" cases is generally determined by whether the plaintiff produces direct rather than circumstantial evidence of discrimination. If the plaintiff produces direct evidence of discrimination, this is sufficient to show that the defendant's activity was motivated at least in part by animus toward a protected class, and therefore a "mixed-motive" instruction is given. If the evidence of discrimination is only circumstantial, then defendant can argue that there was no animus at all, and that its employment decision can be explained completely by a non-discriminatory motive; it is then for the plaintiff to show that the alleged non-discriminatory motive is a pretext, and accordingly Instruction 5.1.2 should be given. *See generally* Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir. 2002) (using "direct evidence" to describe "mixed-motive" cases and noting that pretext cases arise when the plaintiff presents only indirect or circumstantial evidence of discrimination).

On the proper use of mixed-motive instructions, see Matthew Scott and Russell Chapman, *Much Ado About Nothing — Why* Desert Palace *Neither Murdered* McDonnell Douglas *Nor Transformed All Employment Discrimination Cases To Mixed-Motive*, 36 St. Mary's L.J. 395 (2005):

Thus, a case properly analyzed under [42 U.S.C.] § 2000e-2(a) (what some commentators refer to as pretext cases) involves the plaintiff alleging an improper motive for the defendant's conduct, while the defendant disavows that motive and professes only a non-discriminatory motive. On the other hand, a true mixed motive case under [42 U.S.C.] § 2000e-2(m) involves either a defendant who ... *admits* to a partially discriminatory reason for its actions, while also claiming it would have taken the same action were it not for the illegitimate rationale or ... [there is] otherwise credible evidence to support such a finding.

The rationale for the distinction ... is simple. When the defendant renounces any illegal motive, it puts the plaintiff to a higher standard of proof that the challenged employment action was taken *because of* the plaintiff's race/color/religion/sex/national origin. But, the plaintiff, if successful, is entitled to the full panoply of damages under § 2000e-5 ....

At the same time, where the defendant is contrite and admits an improper motive (something no jury will take lightly), or there is evidence to support such a finding, the defendant's liability risk is reduced to declaratory relief, attorneys' fees and costs if the defendant proves it would have taken the same action even without considering the protected trait. The quid pro quo for this reduced financial risk is the lesser standard of liability (the challenged employment action need only be a motivating factor).

### Distinction Between Disparate Impact and Disparate Treatment; Elements of Disparate Treatment Claim

The Third Circuit has set out the elements of a disparate treatment claim — and distinguished a disparate impact claim — in E.E.O.C. v. Metal Service Co., 892 F.2d 341, 347–348 (3d Cir. 1990):

A violation of Title VII can be shown in two separate and distinct ways. *See generally Watson v. Fort Worth Bank and Trust,* 487 U.S. 977 (1988). First, a Title VII plaintiff can utilize the disparate impact theory of discrimination. A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group, and which

cannot be justified as serving a legitimate business goal of the employer. See *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989) (like the analytical proof structure under the disparate treatment theory, the burden of showing disparate impact always remains with the plaintiff and the employer has only the burden of production, on the issue of business justification, once a prima facie case has been established). No proof of intentional discrimination is necessary.

Alternatively, the Title VII plaintiff can argue a disparate treatment theory of discrimination …. A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII. Unlike the disparate impact theory, proof of the employer's discriminatory motive is critical under this analysis. Discriminatory intent can either be shown by direct evidence, or through indirect or circumstantial evidence. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

If discriminatory intent is shown indirectly, the burden of production can be shifted to the employer once the plaintiff establishes a prima facie case of discrimination. The employer's burden is to articulate a legitimate, nondiscriminatory reason for the adverse action. However, the ultimate burden of persuasion on the issue of intent remains with the Title VII plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the seminal case of *McDonnell Douglas*, the Supreme Court set forth the by now quite familiar four-prong test for what constitutes a prima facie case:

(i) that [the complainant] belongs to a racial minority; (ii) that [the complainant] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [the complainant's] qualifications, [the complainant] was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

However, the Court cautioned that the "facts necessarily will vary in Title VII cases, and the specification … of the prima facie proof required from [the complainant] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13. Since *McDonnell Douglas*, the Supreme Court has held consistently that the *McDonnell Douglas* test forms one model of a prima facie case, not an invariable scheme.

This court has noted similarly that the *McDonnell Douglas* prima facie test should not be viewed as a rigid formula and the elements enumerated in *McDonnell Douglas* need not be present in every Title VII case. *Kunda v. Muhlenberg College*, 621 F.2d 532, 542 (3d Cir. 1980) ("of necessity this cannot be an inflexible rule").

Thus, since the importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act, courts need not, and should not, stubbornly analyze all Title VII

factual scenarios through the *McDonnell Douglas* formula. Instead, courts must be sensitive to the myriad of ways such an inference can be created. Simply stated, a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.

### *"Same Decision" Affirmative Defense in Mixed–Motive Cases*

Where the plaintiff has shown intentional discrimination in a mixed motive case, the defendant can still avoid liability for money damages by demonstrating by a preponderance of the evidence that the same decision would have been made even in the absence of the impermissible motivating factor. If the defendant establishes this defense, the plaintiff is then entitled only to declaratory and injunctive relief, attorney's fees and costs. Orders of reinstatement, as well as the substitutes of back and front pay, are prohibited if a same decision defense is proven. 42 U.S.C. § 2000e-(5)(g)(2)(B).

### 5.1.2 Elements of a Title VII Claim — Disparate Treatment — Pretext

**Model**

In this case Fabian Rojas is alleging that he was terminated. In order for Fabian Rojas to recover on this discrimination claim against the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale, Fabian Rojas must prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally discriminated against Fabian Rojas. This means that Fabian Rojas must prove that his national origin was a determinative factor in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision to terminate Fabian Rojas.

To prevail on this claim, Fabian Rojas must prove both of the following by a preponderance of the evidence:

First: the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale terminated or constructively discharged Fabian Rojas; and

Second: Fabian Rojas' national origin was a determinative factor in the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's decision.

Although Fabian Rojas must prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale acted with the intent to discriminate, Fabian Rojas is not required to prove that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale acted with the particular intent to violate Fabian Rojas' federal civil rights. Moreover, Fabian Rojas is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

[For example, you have been shown statistics in this case. Statistics are one form of evidence from which you may find, but are not required to find, that a defendant intentionally discriminated against a plaintiff. You should evaluate statistical evidence along with all the other evidence received in the case in deciding whether the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally discriminated against Fabian Rojas].

The County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale has given a nondiscriminatory reason for its termination of Fabian Rojas. If you disbelieve the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's explanations for its conduct, then you may, but need not, find that Fabian Rojas has proved intentional discrimination. In determining whether the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's stated reason for its actions was a pretext, or excuse, for discrimination, you may not question the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale or believe it is harsh or unreasonable. You are not to consider the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's wisdom. However, you may consider whether the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's reason is merely a cover-up for discrimination.

Ultimately, you must decide whether Fabian Rojas has proven that his national origin was a determinative factor in his termination. "Determinative factor" means that if not for Fabian Rojas' national origin, his termination would not have occurred.

**Comment**

This instruction is to be used when the plaintiff's proof of discrimination is circumstantial rather than direct. See the Comment to Instruction 5.1.1.

In St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993), the Supreme Court stated that a plaintiff in a Title VII case always bears the burden of proving whether the defendant intentionally discriminated against the plaintiff. The instruction follows the ruling in *Hicks*.

### The McDonnell Douglas Burden–Shifting Test

The proposed instruction does not charge the jury on the complex burden-shifting formula established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under the *McDonnell Douglas* formula a plaintiff who proves a prima facie case of discriminatory treatment raises a presumption of intentional discrimination. The defendant then has the burden of production, not persuasion, to rebut the presumption of discrimination by articulating a nondiscriminatory reason for its actions. If the defendant does articulate a nondiscriminatory reason, the plaintiff must prove intentional discrimination by demonstrating that the defendant's proffered reason was a pretext, hiding the real discriminatory motive.

In Smith v. Borough of Wilkinsburg, 147 F.3d 272, 280 (3d Cir. 1998), the Third Circuit declared that "the jurors must be instructed that they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision." The court also stated, however, that "[t]his does not mean that the instruction should include the technical aspects of the *McDonnell Douglas* burden shifting, a charge reviewed as unduly confusing and irrelevant for a jury." The court concluded as follows:

Without a charge on pretext, the course of the jury's deliberations will depend on whether the jurors are smart enough or intuitive enough to realize that inferences of discrimination may be drawn from the evidence establishing plaintiff's prima facie case and the pretextual nature of the employer's proffered reasons for its actions. It does not denigrate the intelligence of our jurors to suggest that they need some instruction in the permissibility of drawing that inference.

In Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 347 n.1 (3d Cir. 1999), the Third Circuit gave extensive guidance on the place of the *McDonnell Douglas* test in jury instructions:

The short of it is that judges should remember that their audience is composed of jurors and not law students. Instructions that explain the subtleties of the *McDonnell Douglas* framework are generally inappropriate when jurors are being asked to determine whether intentional discrimination has occurred. To be sure, a jury instruction that contains elements of the *McDonnell Douglas* framework may sometimes be required. For example, it has been suggested that "in the rare case when the employer has not articulated a legitimate nondiscriminatory reason, the jury must decide any disputed elements of the prima facie case and is instructed to render a verdict for the plaintiff if those elements are proved." [United States v.] *Ryther*, 108 F.3d at 849 n.14 (Loken, J., for majority of en banc court). But though elements of the framework may comprise part of the instruction, judges should present them in a manner that is free of legalistic jargon. In most cases, of course, determinations concerning a prima facie case will remain the exclusive domain of the trial judge.

On proof of intentional discrimination, see Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066–1067 (3d Cir. 1996) ("the elements of the prima facie case and disbelief of the defendant's proffered reasons are the threshold findings, beyond

which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.").

### Pretext

The Third Circuit described the standards for proof of pretext in <u>Atkinson v. Lafayette College, 460 F.3d 447, 454 (3d Cir. 2006)</u>:

We have recognized two ways in which a plaintiff can prove pretext. First, the plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." <u>*Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)</u>. Second, and alternatively, the plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. "[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." <u>*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108–09 (3d Cir. 1997)</u> (citation omitted). The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." <u>Id. at 1109</u>. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Id. (citation omitted).

### Business Judgment

On the "business judgment" portion of the instruction, see <u>Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir.1991)</u>, where the court stated that "[b]arring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." The *Billet* court noted that "[a] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision." The *Billet* court cited favorably the First Circuit's decision in <u>Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir.1979)</u>, where the court stated that "[w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination."

### Determinative Factor

The reference in the instruction to a "determinative factor" is taken from <u>Watson v. SEPTA, 207 F.3d 207 (3d Cir. 2000)</u> (holding that the appropriate term in pretext cases is "determinative factor", while the appropriate term in mixed-motive cases is "motivating factor").

### 5.2.2 Title VII Definitions — Constructive Discharge

**Model**

In addition to claiming that he was terminated, Fabian Rojas claims that he was forced to resign due to the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's discriminatory conduct. Such a forced resignation, if proven, is called a "constructive discharge."

To hold the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale liable for Fabian Rojas' decision to resign, Fabian Rojas must prove all of the following by a preponderance of the evidence:

First: the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally made Fabian Rojas' working conditions so intolerable that a reasonable person would feel forced to resign; note that mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not necessarily so intolerable as to compel a reasonable person to resign.

Second: Fabian Rojas' national origin was a motivating factor in defendant's conduct.

Third: Fabian Rojas resigned from his position.

**Comment**

This instruction can be used when the plaintiff resigned, not fired, but claims that she nonetheless suffered an adverse employment action because she was constructively discharged.

In Pennsylvania Police Dept. v. Suders, 542 U.S. 129, 140–41 (2004), the Court held that Title VII encompasses employer liability for constructive discharge. The Court stated that "[u]nder the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *See* James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 374 (4th Cir. 2004):

To establish constructive discharge, a plaintiff must be able to show that his former employer deliberately made an employee's working conditions intolerable, and thereby forced him to quit …. Demotion can constitute a constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal …. However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.

*See also* Clowes v. Allegheny Valley Hospital, 991 F.2d 1159 (3d Cir. 1993) (ADEA claim) (close supervision of the employee was not enough to constitute a constructive discharge).

**5.4.1 Title VII Damages — Compensatory Damages — General Instruction**

**Model**

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale should be held liable.

If you find by a preponderance of the evidence that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally discriminated against Fabian Rojas by terminating him, then you must consider the issue of compensatory damages. You must award Fabian Rojas an amount that will fairly compensate him for any injury he actually sustained as a result of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Fabian Rojas in the position he would have occupied if the discrimination had not occurred. Fabian Rojas has the burden of proving damages by a preponderance of the evidence.

Fabian Rojas must show that the injury would not have occurred without the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act. Fabian Rojas must also show that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's actions  were motivated by discrimination. In other words, even assuming that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's actions were motivated by discrimination, Fabian Rojas is not entitled to damages for an injury unless the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's discriminatory actions actually played a substantial part in bringing about that injury.

[There can be more than one cause of an injury. To find that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act  caused Fabian Rojas' injury, you need not find that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act was the nearest cause, either in time or space. However, if Fabian Rojas' injury was caused by a later, independent event that intervened between the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's act and Fabian Rojas' injury, the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale is not liable unless the injury was reasonably foreseeable by the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Fabian Rojas experienced as a consequence of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's unlawful termination. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Fabian Rojas would have earned, either in the past or in the future, if he had continued in employment with the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale. These elements of recovery of wages that Fabian Rojas would have received from the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale are called "back pay" and "front pay". [Under the applicable law, the determination of "back pay" and "front pay" is for the court.] ["Back pay" and "front pay" are to be awarded separately under instructions that I will soon give you, and any amounts for "back pay" and "front pay" are to be entered separately on the verdict form.]

You may award damages for monetary losses that Fabian Rojas may suffer in the future as a result of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's unlawful termination. [For example, you may award damages for loss of earnings resulting from any harm to Fabian Rojas' reputation that was suffered as a result of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's unlawful termination. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Fabian Rojas would have earned in the future from the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale if he had retained the job.]

As I instructed you previously, Fabian Rojas has the burden of proving damages by a preponderance of the evidence. But the law does not require that Fabian Rojas prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

[You are instructed that Fabian Rojas has a duty under the law to "mitigate" his damages — that means that Fabian Rojas must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale. It is the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's burden to prove that Fabian Rojas has failed to mitigate. So if the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale persuades you by a preponderance of the evidence that Fabian Rojas failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Fabian Rojas' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.]

[In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.]

**Comment**

Title VII distinguishes between disparate treatment and disparate impact discrimination and allows recovery of compensatory damages only to those who suffered intentional discrimination. 42 U.S.C.A. § 1981a(a)(1).

*Cap on Damages*

The Civil Rights Act of 1991 (42 U.S.C. § 1981a) provides for compensatory damages and a right to jury trial for disparate treatment violations. But it also imposes a statutory limit on the amount of compensatory damages that can be awarded. See 42 U.S.C. § 1981a(b)(3):

**Limitations.** The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental

anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party —

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(c)(2) provides that the court shall not inform the jury of the statutory limitations on recovery of compensatory damages.

### No Right to Jury Trial for Back Pay and Front Pay

Back pay and front pay are equitable remedies that are to be distinguished from the compensatory damages to be determined by the jury under Title VII. See the Comments to Instructions 5.4.3–5.4.4. Compensatory damages may include lost future earnings over and above the front pay award. For example, the plaintiff may recover the diminution in expected earnings in all future jobs due to reputational or other injuries, above any front pay award. The court in Williams v. Pharmacia, Inc., 137 F.3d 944, 953–54 (7th Cir. 1998), described the difference between the equitable remedy of front pay and compensatory damages for loss of future earnings in the following passage:

Front pay in this case compensated Williams for the immediate effects of Pharmacia's unlawful termination of her employment. The front pay award approximated the benefit Williams would have received had she been able to return to her old job. The district court appropriately limited the duration of Williams's front pay award to one year because she would have lost her position by that time in any event because of the merger with Upjohn.

The lost future earnings award, in contrast, compensates Williams for a lifetime of diminished earnings resulting from the reputational harms she suffered as a result of Pharmacia's discrimination. Even if reinstatement had been feasible in this case, Williams would still have been entitled to compensation for her lost future earnings. As the district court explained:

Reinstatement (and therefore front pay) ... does not and cannot erase that the victim of discrimination has been terminated by an employer, has sued that employer for discrimination, and the subsequent decrease in the employee's attractiveness to other employers into the future, leading to further loss in time or level of experience. Reinstatement does not revise an employee's resume or erase all forward-looking aspects of the injury caused by the discriminatory conduct.

A reinstated employee whose reputation and future prospects have been damaged may be effectively locked in to his or her current employer. Such an employee cannot change jobs readily to pursue higher wages and is more likely to remain unemployed if the

current employer goes out of business or subsequently terminates the employee for legitimate reasons. These effects of discrimination diminish the employee's lifetime expected earnings. Even if Williams had been able to return to her old job, the jury could find that Williams suffered injury to her future earning capacity even during her period of reinstatement. Thus, there is no overlap between the lost future earnings award and the front pay award.

The *Williams* court emphasized the importance of distinguishing front pay from lost future earnings, in order to avoid double-counting.

[T]he calculation of front pay differs significantly from the calculation of lost future earnings. Whereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects .... [W]e caution lower courts to take care to separate the equitable remedy of front pay from the compensatory remedy of lost future earnings .... Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings. District courts should be vigilant to ensure that their damage inquiries are appropriately cabined to protect against confusion and potential overcompensation of plaintiffs.

The pattern instruction contains bracketed material that would instruct the jury not to award back pay or front pay. The jury may, however, enter an award of back pay and front pay as advisory, or by consent of the parties. In those circumstances, the court should refer to instructions 5.4.3 for back pay and 5.4.4 for front pay. In many cases it is commonplace for back pay issues to be submitted to the jury. The court may think it prudent to consult with counsel on whether the issues of back pay or front pay should be submitted to the jury (on either an advisory or stipulated basis) or is to be left to the court's determination without reference to the jury.

### *Damages for Pain and Suffering*

In Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108, 1121–22 (3d Cir.1988), the Court held that under 42 U.S.C. § 1981 and Title VII, a plaintiff cannot recover pain and suffering damages without first presenting evidence of actual injury. The court stated that "[t]he justifications that support presumed damages in defamation cases do not apply in § 1981 and Title VII cases. Damages do not follow of course in § 1981 and Title VII cases and are easier to prove when they do."

### *Attorney Fees and Costs*

There appears to be no uniform practice regarding the use of an instruction that warns the jury against speculation on attorney fees and costs. In Collins v. Alco Parking Corp., 448 F.3d 652 (3d Cir. 2006), the district court gave the following instruction: "You are instructed that if plaintiff wins on his claim, he may be entitled to an award of attorney fees and costs over and above what you award as damages. It is my duty to decide whether to award attorney fees and costs, and if so, how much. Therefore, attorney fees and costs should play no part in your calculation of any damages." *Id.* at 656–57. The Court of Appeals held that the plaintiff had not properly objected to the instruction, and, reviewing for plain error, found none: "We need not and do not decide now whether a district court commits error by informing a jury about the availability of attorney fees in an ADEA case. Assuming *arguendo* that an error occurred, such error is not plain, for two reasons." *Id.* at 657. First, "it is not 'obvious' or 'plain' that an

instruction directing the jury *not* to consider attorney fees" is irrelevant or prejudicial; "it is at least arguable that a jury tasked with computing damages might, absent information that the Court has discretion to award attorney fees at a later stage, seek to compensate a sympathetic plaintiff for the expense of litigation." *Id.* Second, it is implausible "that the jury, in order to eliminate the chance that Collins might be awarded attorney fees, took the disproportionate step of returning a verdict against him even though it believed he was the victim of age discrimination, notwithstanding the District Court's clear instructions to the contrary." *Id.*; *see also id.* at 658 (distinguishing Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000), and Brooks v. Cook, 938 F.2d 1048, 1051 (9th Cir. 1991)).

### 5.4.2 Title VII Damages — Punitive Damages

**Model**

Fabian Rojas claims the acts of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale were done with malice or reckless indifference to Fabian Rojas' federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future. [Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury, and so receives nominal rather than compensatory damages.]

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale personally acted with malice or reckless indifference to Fabian Rojas' federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

[For use where the defendant raises a jury question on good-faith attempt to comply with the law:

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Fabian Rojas' federal rights, you cannot award punitive damages if the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Fabian Rojas.]

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied [and that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale has not proved that it made a good-faith attempt to comply with the law], then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale. You should also consider whether actual damages standing alone are sufficient to deter or prevent the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale or others from committing similar wrongful acts in the future.

[The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent

future misconduct, may depend upon the defendant's financial resources. Therefore, if you find that punitive damages should be awarded against the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale, you may consider the financial resources of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale in fixing the amount of those damages.]

**Comment**

42 U.S.C.A. § 1981a(b)(1) provides that "[a] complaining party may recover punitive damages under this section [Title VII] against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Punitive damages are available only in cases of intentional discrimination, i.e., cases that do not rely on the disparate impact theory of discrimination.

In Kolstad v. American Dental Association, 527 U.S. 526, 534–35 (1999), the Supreme Court held that plaintiffs are not required to show egregious or outrageous discrimination in order to recover punitive damages under Title VII. The Court read 42 U.S.C.A. § 1981a to mean, however, that proof of intentional discrimination is not enough in itself to justify an award of punitive damages, because the statute suggests a congressional intent to authorize punitive awards "in only a subset of cases involving intentional discrimination." Therefore, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Kolstad, 527 U.S. at 536. The Court further held that an employer may be held liable for a punitive damage award for the intentionally discriminatory conduct of its employee only if the employee served the employer in a managerial capacity, committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good faith efforts to comply with federal law. Kolstad, 527 U.S. at 545–46. In determining whether an employee is in a managerial capacity, a court should review the type of authority that the employer has given to the employee and the amount of discretion that the employee has in what is done and how it is accomplished. Id., 527 U.S. at 543.

### *Affirmative Defense to Punitive Damages for Good-Faith Attempt to Comply With the Law*

The Court in *Kolstad* established an employer's good faith as a defense to punitive damages, but it did not specify whether it was an affirmative defense or an element of the plaintiff's proof for punitive damages. The instruction sets out the employer's good faith attempt to comply with anti-discrimination law as an affirmative defense. The issue has not yet been decided in the Third Circuit, but the weight of authority in the other circuits establishes that the defendant has the burden of showing a good-faith attempt to comply with laws prohibiting discrimination. See Medcalf v. Trustees of University of Pennsylvania, 71 Fed. Appx. 924, 933 n.3 (3d Cir. 2003) (noting that "the Third Circuit has not addressed the issue of whether the good faith compliance standard set out in *Kolstad* is an affirmative defense for which the defendant bears the burden of proof, or whether the plaintiff must disprove the defendant's good faith compliance with Title VII by a preponderance of the evidence"; but also noting that, "[a] number of other circuits have determined that the defense is an affirmative one."); Romano v. U-Haul Int'l, 233 F.3d 655, 670 (1st Cir.2000) ("The defendant … is responsible for showing good faith efforts to comply with the requirements of Title VII"); Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 385 (2d Cir.2001) (referring to the defense as an affirmative defense that "requires an employer to establish both that it had an antidiscrimination policy and made good faith effort to enforce it."); Bruso v. United Airlines, Inc., 239 F.3d 848, 858–59 (7th Cir. 2001) ("Even if the plaintiff establishes that the employer's managerial agents recklessly disregarded his federally protected rights while acting within the scope of their employment, the employer may avoid

liability for punitive damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy."); MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 931 (8th Cir. 2004) ("A corporation may avoid punitive damages by showing that it made good faith efforts to comply with Title VII after the discriminatory conduct."); Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 516 (9th Cir.2000) (under *Kolstad*, defendants may "establish an affirmative defense to punitive damages liability when they have a bona fide policy against discrimination, regardless of whether or not the prohibited activity engaged in by their managerial employees involved a tangible employment action."); Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1208 (10th Cir. 2002) (under *Kolstad*, "even if the plaintiff establishes that the employer's managerial employees recklessly disregarded federally-protected rights while acting within the scope of employment, punitive damages will not be awarded if the employer shows that it engaged in good faith efforts to comply with Title VII.").

### *Caps on Punitive Damages*

Punitive damages are subject to caps in Title VII actions. See 42 U.S.C. § 1981a(b)(3). But 42 U.S.C. § 1981a(c)(2) provides that the court shall not inform the jury of the statutory limitations on recovery of punitive damages.

### *Due Process Limitations*

The Supreme Court has imposed some due process limits on both the size of punitive damages awards and the process by which those awards are determined and reviewed. In performing the substantive due process review of the size of punitive awards, a court must consider three factors: "the degree of reprehensibility of" the defendant's conduct; "the disparity between the harm or potential harm suffered by" the plaintiff and the punitive award; and the difference between the punitive award "and the civil penalties authorized or imposed in comparable cases." BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996).

For a complete discussion of the applicability of the *Gore* factors to a jury instruction on punitive damages, see the Comment to Instruction 4.8.3.

**5.4.3 Title VII Damages — Back Pay— For Advisory or Stipulated Jury**

**Model**

If you find that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale intentionally discriminated against Fabian Rojas by terminating him, then you must determine the amount of damages that the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's actions have caused Fabian Rojas. Fabian Rojas has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Fabian Rojas for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Fabian Rojas would have received from the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale had Fabian Rojas not been the subject of the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's intentional discrimination.

Back pay damages, if any, apply from the time Fabian Rojas was terminated until the date of your verdict. [However, federal law limits a plaintiff's recovery for back pay to a maximum of a two year period before the plaintiff filed his discrimination charge with the Equal Opportunity Employment Commission. Therefore the back pay award in this case must be determined only for the period between [specify dates]].

You must reduce any award by the amount of the expenses that Fabian Rojas would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Fabian Rojas has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

[You are further instructed that Fabian Rojas has a duty to mitigate his damages — that is Fabian Rojas is required to make reasonable efforts under the circumstances to reduce his damages. It is the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale's burden to prove that Fabian Rojas has failed to mitigate. So if the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale persuades you, by a preponderance of the evidence, that Fabian Rojas failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Fabian Rojas reasonably would have earned if he had obtained those opportunities.]

**Comment**

Title VII authorizes a back pay award as a remedy for intentional discrimination. 42 U.S.C. § 2000e-5(g)(1). *See* Loeffler v. Frank, 486 U.S. 549, 558 (1988) (the back pay award authorized by Title VII "is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination."). Title VII provides a presumption in favor of a back pay award once liability has been found. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975).

*Back Pay Is an Equitable Remedy*

An award of back pay is an equitable remedy; thus there is no right to jury trial on a claim for back pay. *See* 42 U.S.C. § 1981(b)(2) ("Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e5(g)]."); 42 U.S.C. § 2000e-5(g)(1) ("If the court finds that the respondent has

intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... *or any other* equitable relief as the court deems appropriate) (emphasis added). *See also* Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 (3d Cir. 2006) (relying on the statutory language of Title VII, which applies to damages recovery under the ADA, the court holds in an ADA action that "back pay remains an equitable remedy to be awarded within the discretion of the court"); Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843 (2001) (noting that front pay and back pay are equitable remedies not subject to the Title VII cap on compensatory damages).

An instruction on back pay is nonetheless included because the parties or the court may wish to empanel an advisory jury — especially given the fact that in most cases the plaintiff will be seeking compensatory damages and the jury will be sitting anyway. See Fed. R.Civ.P. 39(c). Alternatively, the parties may agree to a jury determination on back pay, in which case this instruction would also be appropriate. In many cases it is commonplace for back pay issues to be submitted to the jury. The court may think it prudent to consult with counsel on whether the issues of back pay or front pay should be submitted to the jury (on either an advisory or stipulated basis) or are to be left to the court's determination without reference to the jury. Instruction 5.4.1, on compensatory damages, instructs the jury in such cases to provide separate awards for compensatory damages, back pay, and front pay.

*Computation of Back Pay*

The appropriate standard for measuring a back pay award under Title VII is "to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108, 1119–20 (3d Cir. 1988).

Title VII includes the provision that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." 42 U.S.C. § 2000e-5(g). This constitutes a limit on liability, not a statute of limitations, and has been interpreted as a cap on the amount of back pay that may be awarded under Title VII. *See* Albemarle Paper Co. v. Moody, 422 U.S. 405, 410 n. 3 (1975). In Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 54 (3d Cir. 1989), the court held that it was plain error to fail to instruct the jury about statutory caps on back pay awards.

In Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 82 (3d Cir. 1983), the court held that unemployment benefits should not be deducted from a Title VII back pay award. That holding is reflected in the instruction.

*Mitigation*

On the question of mitigation that would reduce an award of back pay, see Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir.1995):

A successful claimant's duty to mitigate damages is found in Title VII: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); see *Ellis v. Ringgold Sch. Dist.*, 832 F.2d 27, 29 (3d Cir. 1987). Although the statutory duty to mitigate damages is placed on a Title VII plaintiff, the employer has the burden of proving a failure to mitigate. See *Anastasio v. Schering Corp.*, 838 F.2d 701, 707–08 (3d Cir. 1988). To meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the Title VII claimant did not exercise reasonable diligence to obtain the employment.

...

The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market. See *Tubari Ltd., Inc. v. NLRB*, 959 F.2d 451, 454 (3d Cir. 1992). Generally, a plaintiff may satisfy the "reasonable diligence" requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment ....

The duty of a successful Title VII claimant to mitigate damages is not met by using reasonable diligence to obtain any employment. Rather, the claimant must use reasonable diligence to obtain substantially equivalent employment. See *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 (1982). Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated.

In *Booker*, the court rejected the defendant's argument that *any* failure to mitigate damages must result in a forfeiture of *all* back pay. The court noted that "the plain language of section 2000e-5 shows that amounts that could have been earned with reasonable diligence should be used to reduce or decrease a back pay award, not to wholly cut off the right to any back pay. See 42 U.S.C. § 2000e-5(g)(1)." The court further reasoned that the "no-mitigation-no back pay" argument is inconsistent with the "make whole" purpose underlying Title VII. 64 F.3d at 865.

### After–Acquired Evidence of Employee Misconduct

In McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 362 (1995), the Court held that if an employer discharges an employee for a discriminatory reason, later-discovered evidence that the employer could have used to discharge the employee for a legitimate reason does not immunize the employer from liability. However, the employer in such a circumstance does not have to offer reinstatement or front pay and only has to provide back pay "from the date of the unlawful discharge to the date the new information was discovered." 513 U.S. at 362. *See also* Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073 (3d Cir. 1995) (stating that "after-acquired evidence may be used to limit the remedies available to a plaintiff where the employer can first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."). Both *McKennon* and *Mardell* observe that the defendant has the burden of showing that it would have made the same employment decision when it became aware of the post-decision evidence of the employee's misconduct.

**5.4.4 Title VII Damages — Front Pay — For Advisory or Stipulated Jury**

**Model**

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Fabian Rojas would reasonably have earned from the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale had Fabian Rojas not been unlawfully terminated for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Fabian Rojas will receive from other employment during that time. Fabian Rojas has the burden of proving these damages by a preponderance of the evidence.

[If you find that Fabian Rojas is entitled to recovery of future earnings from the County of Passaic, the Passaic County Sheriff's Department and Jerry Speziale, then you must reduce any award by the amount of the expenses that Fabian Rojas would have incurred in making those earnings.]

You must also reduce any award to its present value by considering the interest that Fabian Rojas could earn on the amount of the award if he made a relatively risk-free investment. You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Fabian Rojas if he receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because Fabian Rojas can earn interest on it for the period of time between the date of the award and the date he would have earned the money. So you should decrease the amount of any award for loss of future earnings by the amount of interest that Fabian Rojas can earn on that amount in the future.

**Comment**

There is no right to jury trial under Title VII for a claim for front pay. *See* Pollard v. E. I. du Pont de Nemours & Co., 532 U.S. 843 (2001) (holding that front pay under Title VII is not an element of compensatory damages). In *Pollard* the Court reasoned that the Civil Rights Act of 1991 expanded the remedies available in Title VII actions to include legal remedies and provided a right to jury trial on those remedies. Therefore, remedies that were cognizable under Title VII before the Civil Rights Act of 1991 must be treated as equitable remedies. Any doubt on the question is answered by the Civil Rights Act itself: 42 U.S.C. § 1981a(a)(1) provides that, in intentional discrimination cases brought under Title VII, "the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of [§ 1981a], *in addition to any relief* authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent."

An instruction on front pay is nonetheless included because the parties or the court may wish to empanel an advisory jury — especially given the fact that in most cases the plaintiff will be seeking compensatory damages and the jury will be sitting anyway. See Fed. R.Civ.P. 39(c). Alternatively, the parties may agree to a jury determination on front pay, in which case this instruction would also be appropriate. Instruction 5.4.1, on compensatory damages, instructs the jury in such cases to provide separate awards for compensatory damages, back pay, and front pay.

Front pay is considered a remedy that substitutes for reinstatement, and is awarded when reinstatement is not viable under the circumstances. *See* Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 260–61 (3d Cir. 1986) (noting that "when circumstances prevent reinstatement, front pay may be an alternate remedy").

In Monessen S.R. Co. v. Morgan, 486 U.S. 330, 339 (1988), the Court held that "damages awarded in suits governed by federal law should be reduced to present value." (Citing St. Louis Southwestern R. Co. v. Dickerson, 470 U.S. 409, 412 (1985)). The

"self-evident" reason is that "a given sum of money in hand is worth more than the like sum of money payable in the future." The Court concluded that a "failure to instruct the jury that present value is the proper measure of a damages award is error." Id. Accordingly, the instruction requires the jury to reduce the award of front pay to present value. It should be noted that where damages are determined under state law, a present value instruction may not be required under the law of certain states. *See, e.g.,* Kaczkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027 (1980) (advocating the "total offset" method, under which no reduction is necessary to determine present value, as the value of future income streams is likely to be offset by inflation).